894 F.2d 402
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick BALLENGER, Defendant-Appellant.
 No. 88-5688.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 3, 1989.
Decided: Jan. 5, 1990.
Rehearing and Rehearing En Banc Denied March 22, 1990.
 
 1
 John Allen Rosenthal (Rosenthal & Roane, on brief), for appellant.
 
 
 2
 John Thomas Martin, Assistant United States Attorney (Henry E. Hudson, United States Attorney, on brief), for appellee.
 
 
 3
 Before WIDENER and PHILLIPS, Circuit Judges, and JAMES C. FOX, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 
 JAMES C. FOX, District Judge:
 
 4
 Frederick Ballenger appeals his September 7, 1988, convictions of the following statutory offenses:
 
 
 5
 (1) Conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine (21 U.S.C. Sec. 846);
 
 
 6
 (2) Possession with intent to distribute over 500 grams of cocaine (21 U.S.C. Sec. 841(a)(1));
 
 
 7
 (3) Interstate travel in aid of unlawful activity (18 U.S.C. Sec. 1952(a)(3)); and
 
 
 8
 (4) Carrying a firearm during and in relation to a drug trafficking crime (18 U.S.C. Sec. 924(c)).
 
 
 9
 We affirm Ballenger's convictions.
 
 I.
 
 10
 Ballenger challenges the sufficiency of the evidence to sustain his convictions of the enumerated offenses. The evidence, viewed "in the light most favorable to the government," United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982), discloses the following facts:
 
 
 11
 On June 1, 1988, Drug Enforcement Administration (DEA) Special Agent Sam Gaye, acting in an undercover capacity as a drug dealer, met one Nelson Rosa, and discussed the possibility of Rosa selling Gaye cocaine. Rosa purported to deal in 35-40 kilograms of cocaine per week, and gave Gaye a one-gram sample of cocaine. On June 6, 1988, Rosa agreed to sell four kilograms of cocaine to Gaye for $25,000 per kilo.
 
 
 12
 On the evening of June 7, 1988, Gaye met with Rosa in Washington, D.C. Rosa stated that he had sent someone to pick up the cocaine and that this person would be driving a Lincoln Continental. It was agreed that the cocaine transfer would take place at a nearby location in Virginia. While they waited for the cocaine to arrive, Rosa went to a pay telephone, placed a call, and asked if "Freddie" had arrived yet. Rosa finished his conversation and told Gaye that his "man" would be arriving shortly.
 
 
 13
 Approximately fifteen minutes later, the defendant, Frederick Ballenger, arrived driving a Lincoln. Rosa entered the passenger side of the Lincoln, and the two followed Gaye's vehicle to the Washington Sailing Marina, in Alexandria, Virginia, in the Eastern District of Virginia, where they parked in a rear parking lot. Rosa exited the car and eventually went to the rear door on the driver's side of the Lincoln. Rosa reached into the back seat of the Lincoln and removed a cardboard box. When Rosa removed the box from the Lincoln, the top flaps of the box were positioned in such a way that two packages of white powder were visible to Gaye.
 
 
 14
 Rosa placed the box, which was later found to contain approximately four kilograms of cocaine, on a nearby vehicle (occupied by another DEA agent posing as a confederate of Gaye). Rosa and Ballenger were thereupon arrested. Ballenger, in the Lincoln at the time of his arrest, told one of the DEA agents that they were interfering with an operation in which he was involved. Ballenger, an off-duty Washington, D.C. police officer, was then carrying his badge and gun. He was not involved, however, in an undercover operation that evening. Prior to June 7, 1987, the name "Frederick Ballenger" had never surfaced in the investigation.
 
 
 15
 According to a DEA expert in the field of practices and techniques of drug traffickers, the quantity of seized cocaine, which had a street value of approximately $800,000, was so large as to be consistent only with further distribution, and was indicative of an ongoing drug trafficking organization engaged in a continuous course of cocaine dealing.
 
 Rosa testified on Ballenger's behalf that:
 
 16
 1. Ballenger had agreed to do Rosa a favor by picking up a box, contents unknown, at a Sears parking lot in Southwest Washington, D.C.;
 
 
 17
 2. the box, then sealed, was in the back seat when Rosa entered Ballenger's car; and
 
 
 18
 3. Ballenger was never told where they were going.
 
 On cross-examination, Rosa testified:
 
 19
 1. He (Rosa) was not a regular drug dealer;
 
 
 20
 2. Ballenger, known to Rosa to be a police officer, was the first person Rosa asked to pick up the box;
 
 
 21
 3. Rosa was confident that Ballenger would not look in the sealed box; and
 
 
 22
 4. Ballenger never asked why the two of them were driving from Washington, D.C. to Virginia to deliver the box.
 
 
 23
 Ardenia Holland, the defendant's girlfriend, testified that Ballenger's Lincoln was a vehicle on which the two made a down payment with winnings she had received on a television game show.
 
 
 24
 We find the evidence to be a rational predicate for Ballenger's convictions for the following reasons:
 
 
 25
 1. When telephonically arranging for the delivery of the cocaine, Rosa spoke to a man named "Freddie," a derivation of Ballenger's given name.
 
 
 26
 2. Rosa indicated that his "man" would drive a Lincoln, as defendant subsequently was driving at his meeting with Gaye and Rosa.
 
 
 27
 3. Rosa would not likely initially solicit a police officer to assist in the delivery of cocaine, unless the latter was implicated in the scheme.
 
 
 28
 4. An armed person with the appearance of legitimacy would afford security for the contemplated drug transaction.
 
 
 29
 5. Ballenger's false exculpatory statement made in an effort to explain and extricate himself from criminal circumstances infers cognizance of criminal responsibility.
 
 
 30
 6. The box containing cocaine (per the government's evidence) was open and its contents apparent when first observed in Ballenger's car.
 
 
 31
 7. The quantity of cocaine infers an intent to distribute, it being far beyond that affordable and needed for personal use.
 
 
 32
 There being a rational basis for the jury's verdict, we conclude that the evidence is sufficient to sustain defendant's convictions.
 
 II.
 
 33
 As to the firearm conviction, Ballenger contends that because he was lawfully in possession of a service revolver at the time of his arrest he cannot be convicted of violating Title 18 U.S.C. Sec. 924(c). Ballenger's contention is without merit. Section 924(c) states that:
 
 
 34
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years ....
 
 
 35
 The legislative history of Section 924(c) in part is as follows:
 
 
 36
 The requirement ... that the gun be carried unlawfully, a fact usually proven by showing that the defendant was in violation of a State or local law, has been eliminated as unnecessary. The "unlawfully" provision was added originally to section 924(c) because of Congressional concern that without it policemen and persons licensed to carry firearms who committed Federal felonies would be subjected to additional penalties, even where the weapon played no part in the crime, whereas the section was directed at persons who chose to carry a firearm as an offensive weapon for a specific criminal act. See United States v. Howard, 504 F.2d 1281, 1285-1286 (8th Cir.1974). The Committee has concluded that persons who are licensed to carry firearms and abuse that privilege by committing a crime with the weapon, as in the extremely rare case of the armed police officer who commits a crime, are as deserving of punishment as a person whose possession of the gun violates a State or local ordinance.
 
 
 37
 Senate Report No. 98-225, reprinted in 1984 United States Code Congressional & Administrative News, 3182, 3490-92, n. 10. Because the legislative history of Section 924(c) indicates that the lawful possession of a firearm is not an impediment to a conviction under Section 924(c), we find no error in defendant's conviction.
 
 III.
 
 38
 Ballenger contends that his Travel Act (18 U.S.C. Sec. 1952) conviction is invalid because his travel from the District of Columbia to Virginia is not included in the act's definition of "interstate commerce" because the District of Columbia is not a state.
 
 
 39
 Ballenger's contention is without merit. "Interstate commerce," for the purpose of all Title 18 offenses, including the Travel Act, is defined to include "commerce between ... the District of Columbia and another state." 18 U.S.C. Sec. 10. Accordingly, we find no error.
 
 IV.
 
 40
 Lastly, Ballenger complains of the admission of the evidence of Rosa's delivery of a cocaine sample to Gaye on June 1, 1988, some six days prior to Ballenger's arrest on June 7, 1988. Assuming Ballenger's earliest entry into the conspiracy to have occurred on the day of his arrest, such evidence of a prior act by his co-conspirators was relevant to the nature and scope of the conspiracy, and was admissible against him. See United States v. Meeser, 762 F.2d 867, 877 (11th Cir.1985), cert. denied 474 U.S. 1024 (1985); accord United States v. United States Gypsum Co, 333 U.S. 364, 393 (1948).
 
 
 41
 Given the lack of any real deficiency in the evidence, this court is bound by the credibility choices of the jury. For the reasons heretofore expressed, Ballenger's convictions are
 
 
 42
 AFFIRMED.